IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PATRICIA SMITH,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | **No. 19-3514** |

**MEMORANDUM OPINION**

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

Plaintiff Patricia Smith brought this action under 42 U.S.C. 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Act. In accordance with 28 U.S.C. §636(c), Fed. R. Civ. P. 72, and Local Rule 72.1, consent to the exercise of jurisdiction by a Magistrate Judge has been established.

Presently before this court are the plaintiff's request for review, the Commissioner's response, and plaintiff's reply. For the reasons set forth below, the plaintiff's request for review is DENIED.

I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a sixty-six year old woman born on July 23, 1953. (Tr. 200). Plaintiff has past relevant work as a pediatric trauma nurse. (Tr. 86).

On April 25, 2016, plaintiff protectively filed an application for DIB. (Tr. 200-206). Plaintiff alleges a disability onset date of April 14, 2016. (Tr. 136). Plaintiff's application was initially denied at the state level on August 1, 2016. (Tr. 143-147). Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").

On April 26, 2018, ALJ Jessica Marie Johnson held a hearing. (Tr. 74-107). Plaintiff appeared pro se and testified, along with plaintiff's sister, Mary Scott, and vocational expert, Ms. Suzarski. (Tr. 74-107). On October 26, 2018, ALJ Johnson found the plaintiff was not disabled under the Act from April 14, 2016, the alleged onset date, through the date of the decision. (Tr. 49-63). Plaintiff filed a request for review, and on August 7, 2019, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff appealed that decision to this court.

II.     LEGAL STANDARDS

Upon judicial review, this court's role is to determine whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552 (1988). "Substantial evidence is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). It is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). In determining whether substantial evidence exists, the reviewing court may not weigh the evidence or substitute its own conclusion for that of the ALJ. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). If the court determines the ALJ's factual findings are supported by substantial evidence, then the court must accept the findings as

conclusive.  Richardson, 402 U.S. at 390; Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence.  Richardson, 402 U.S. at 401.  While the Third Circuit Court of Appeals has made it clear that the ALJ must analyze all relevant evidence in the record and provide an explanation for disregarding evidence, this requirement does not mandate the ALJ "to use particular language or adhere to a particular format in conducting his analysis."  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  Rather, it is meant "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Id.  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To establish a disability under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  Stunkard v. Sec'y of Health and Human Servs., 841 F.2d 57 (3d Cir. 1988) (quoting Kangas, 823 F.2d at 777); 42 U.S.C. § 423(d)(1) (1982).  The claimant satisfies his burden by showing an inability to return to his past relevant work.  Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979) (citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966)).  Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the economy.  See 20 C.F.R. § 404.1520; Rossi, 602 F.2d at 57.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

>(i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
>(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
>(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
>(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
>(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.   ADMINISTRATIVE LAW JUDGE'S DECISION

Pursuant to the five-step sequential evaluation process, the ALJ determined plaintiff had not been under a "disability," as defined by the Act, from April 14, 2016, the alleged onset date, through the date of the ALJ's decision. (Tr. 59).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since April 14, 2016. (Tr. 55). At step two, the ALJ found plaintiff had the following medically determinable impairments: hypertension, hyperlipidemia, achalasia, uveitis, gastroesophageal reflux disease (GERD), sarcoidosis, and benign positional vertigo. (Tr. 55). However, the ALJ then found that plaintiff does not have an impairment or combination of impairments that has

significantly limited (or is expected to limit) plaintiff's ability to perform basic work-related activities for 12 consecutive months; therefore; the ALJ found plaintiff does not have a severe impairment or combination of impairments. (Tr. 55). Thus, the ALJ determined the plaintiff had not been under a "disability," as defined in the Act, from April 14, 2016 through October 26, 2018, the date of the ALJ's decision. (Tr. 59).

The following summarized medical records pertain to the ALJ's findings:

Plaintiff had a chest x-ray on November 27, 1995, which was unremarkable. (Tr. 410).

In November 1995, plaintiff was seen at the emergency department of Wills Eye Hospital with redness and irritation and was diagnosed with uveitis. (Tr. 399-400). On July 25, 2008, plaintiff was seen at Drexel Medicine for a new patient health maintenance visit and reported that she had been diagnosed with uveitis in 1993 and had been doing well with it since then. (Tr. 648-649).

On December 5, 2007, plaintiff underwent an esophagogastroduodenoscopy procedure. (Tr. 425). The results showed that plaintiff may have achalasia. (Tr. 425).

On July 17, 2015, plaintiff reported that she was doing well. She stated that she checks her blood pressure at work and it is normal, but that she is anxious at the doctor's office and that is why her blood pressure was up that day. (Tr. 500). Plaintiff denied any problems related to her sarcoidosis and that her GERD was stable. (Tr. 500). Plaintiff reported an unhealthy diet, but regular exercise. (Tr. 501). Plaintiff's physical examination was unremarkable, with no abnormal findings being noted for plaintiff's eyes, throat, or gastrointestinal system. (Tr. 502-503). Plaintiff had full range of motion. (Tr. 503).

Plaintiff was treated at the emergency department of Hahnemann Hospital on April 14, 2016 and complained of dizziness. (Tr. 427). Plaintiff reported that she takes her blood pressure regularly and it is often but not always mildly elevated. (Tr. 517). Her physical examination was again normal, with normal strength. (Tr. 518). Plaintiff also explained that she had achalasia, which was better since she had her sphincter opened, and sarcoidosis, which is quiescent. (Tr. 517). Plaintiff was diagnosed with benign paroxysmal positional vertigo and hypertension, uncontrolled. (Tr. 427).

Plaintiff was seen at Drexel Medicine on June 15, 2016. (Tr. 494). It was noted that the plaintiff has a past medical history of esophageal reflux and sarcoidosis, both of which were currently asymptomatic. (Tr. 494). However, plaintiff indicated that she had to retire due to her sarcoidosis and back pain and that she has trouble holding a baby. Plaintiff stated that her uveitis causes eye fatigue and dryness, stress brings out her GERD, and that she has achalasia secondary to her sarcoidosis, and uveitis secondary to the same. (Tr. 494). Plaintiff also explained that she applied for disability. (Tr. 494). Plaintiff's blood pressure was noted to be at 160/98, and plaintiff was prescribed Valsartan for hypertension. (Tr. 496-497). At the appointment plaintiff's physical examination findings were all normal, including her eyes, throat, and gastrointestinal system and plaintiff had full range of motion. (Tr. 497). It was recommended that plaintiff lose 10 pounds and perform 30 minutes of moderate to vigorous activity 5 days a week. (Tr. 498).

Plaintiff was again seen at Drexel Medicine a year later on June 12, 2017 for a physical. (Tr. 556). Plaintiff indicated that while she has sarcoidosis, after treatment, plaintiff's vision returned. (Tr. 556). Plaintiff's blood pressure was noted to be 128/80, and her

prescription for Chlorthalidone was renewed. (Tr. 559-560). Plaintiff's physical examination was normal. (Tr. 559-560).

IV.     PLAINTIFF'S CONTENTIONS

Plaintiff argues: (1) the ALJ erred in finding plaintiff's impairments nonsevere at step two; (2) the ALJ erred in failing to consider evidence; and (3) the ALJ erred in finding plaintiff's testimony was not entirely credible.

V.      DISCUSSION

The Commissioner's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 401. The role of this court is to determine whether substantial evidence supports the Commissioner's decision. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). After a thorough review of the record, we find that the plaintiff's request for review should be denied.

    A. Whether the ALJ Erred in Finding Plaintiff's Impairments Were Not Severe

Plaintiff argues that the ALJ erred in evaluating the medical evidence and plaintiff's disabilities. See Pl. Brief 10/28/19. Plaintiff alleges that the progression of plaintiff's sarcoidosis, degeneration and herniation of her lumbar disc, arthritis, achalasia, uncontrolled high blood pressure, uveitis, and eczema have resulted in an inability to perform daily home and employment functions. See id. at 9. In response, the Commissioner asserts that the ALJ provided substantial support for the finding that plaintiff's impairments do not significantly limit plaintiff's ability to perform work activities.

At step two of the sequential analysis, an individual seeking benefits under the Act bears the burden of proving that she suffers from "a medically severe impairment or

combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 146, n. 5 (1987). An impairment is "severe" when it is "of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.'" Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982) (quoting 20 C.F.R. § 404.1520(b)). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b)(1). An impairment is not severe if it does not significantly limit or has only a minimal effect on a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a).

    The Third Circuit Court of Appeals has stated that the burden placed on an applicant at step two is not an exacting one. See McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). An applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Id. (citing SSR 85–28, 1985 WL 56856, at 3). Any doubt as to whether this showing has been made is to be resolved in favor of the applicant. Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3rd Cir. 2003). "Due to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." McCrea, 370 F.3d at 360. The Third Circuit does not, however, suggest that a district court should apply a more stringent standard of review in these cases. Id. "The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." See id. at 360-61 (citations omitted).

In the instant case, the ALJ concluded, at step two, that the medical evidence did not establish that plaintiff's hypertension, hyperlipidemia, achalasia, uveitis, GERD, sarcoidosis, and benign positional vertigo significantly limited plaintiff's ability to perform basic work-related activities. (Tr. 55). The ALJ also explained that, while the plaintiff alleged a history of herniated discs, that allegation was not supported by the record. (Tr. 55). In making her findings, the ALJ explained that during the relevant time period[1] plaintiff's impairments were asymptomatic, noting that plaintiff's physical examinations were all normal throughout the relevant time period and plaintiff had large gaps in treatment. (Tr. 58). The ALJ also noted that the non-medical evidence did not support plaintiff's alleged symptoms. (Tr. 58-59). Finally, the ALJ supported her decision with the opinion of the state agency examiner, Dr. Morrison. (Tr. 59).

The ALJ noted that the plaintiff alleges disability beginning on April 14, 2016 and that plaintiff retired from employment as an intensive care nurse of 43 years on April 29, 2016. (Tr. 47, 434). In the year prior to plaintiff's alleged disability onset date, plaintiff received medical care only one time on July 17, 2015. (Tr. 500). Plaintiff went for a well visit with a primary care doctor and reported that she was doing well. Plaintiff stated that she checks her blood pressure at work and it is normal, but that she is anxious at the doctor's office and that is why her blood pressure was up that day. (Tr. 500). Plaintiff denied any problems related to her sarcoidosis and reported that her GERD was stable. (Tr. 500). Plaintiff's physical examination was unremarkable, with no abnormal findings being noted for plaintiff's eyes, throat, or gastrointestinal system and plaintiff had full range of motion. (Tr. 502-503).

---

[1] Plaintiff alleged disability beginning April 14, 2016.

The ALJ's decision in the instant matter was rendered in October 2018. The ALJ noted that before the ALJ's decision, the plaintiff had not seen her gastroenterologist, Dr. Reynolds, since March 2016, and had not been seen at Wills Eye hospital since April 2016. (Tr. 57).

Plaintiff received treatment three times between the alleged disability onset date and the date of the ALJ's opinion. In April 2016, plaintiff was treated at Hahnemann Hospital emergency department for dizziness. Plaintiff reported that she takes her blood pressure regularly and it is often but not always mildly elevated. (Tr. 517). Plaintiff's physical examination was normal and she had normal strength. (Tr. 518). Plaintiff also explained that she had achalasia which was better since she had her sphincter opened, and sarcoidosis which is quiescent. (Tr. 517).

Plaintiff was next seen at Drexel Medicine on June 15, 2016, two months after her retirement date. (Tr. 494). It was noted that the plaintiff has a past medical history of esophageal reflux and sarcoidosis, both of which were currently asymptomatic. (Tr. 494). However, the plaintiff indicated that she had to retire due to her sarcoidosis and back pain and that she has trouble holding a baby. Plaintiff stated that her uveitis causes eye fatigue and dryness, stress brings out her GERD, and that she has achalasia secondary to her sarcoidosis, and uveitis secondary to the same. (Tr. 494). Plaintiff also explained that she applied to disability. (Tr. 494). Plaintiff's blood pressure was noted to be at 160/98, and plaintiff was prescribed Valsartan for hypertension. (Tr. 496-497). At the appointment plaintiff's physical examination findings were all normal, including her eyes, throat, and gastrointestinal system and plaintiff had

full range of motion. (Tr. 497). It was recommended that plaintiff lose 10 pounds and perform 30 minutes of moderate to vigorous activity 5 days a week. (Tr. 498).

A year later, on July 12, 2017, plaintiff was again seen at Drexel Medicine for a yearly physical. (Tr. 559-560). Plaintiff indicated that while she has sarcoidosis, after treatment plaintiff's vision returned. (Tr. 556). Plaintiff's blood pressure was noted to be 128/80, and her prescription for Chlorthalidone was renewed. (Tr. 559-560). Plaintiff's physical examination was normal. (Tr. 559-560).

The ALJ reviewed each of the plaintiff's alleged impairments and offered substantial support for the finding that the impairments were not severe.

Uveitis[2]

The ALJ noted that a record from Wills Eye Hospital from November 1995 showed that the plaintiff suffered from uveitis. (Tr. 57, citing 1F/4-5). However, a July 2008 office note indicates that plaintiff's had been asymptomatic since receiving treatment for her uveitis. (Tr. 57, citing 12/72). The ALJ supported the finding that plaintiff's uveitis was nonsevere by explaining that there are no treatment records that indicate any symptoms, treatment or functional limitations since 1995. (Tr. 57).

Achalasia[3]

The ALJ noted that in December 2007 plaintiff was diagnosed with achalasia, however, in April 2016 plaintiff reported that her achalasia had been better since her sphincter

---

[2] Uveitis- Inflammation of the uvea (an inner layer of the eye that includes the iris). See https://www.medicinenet.com/
[3] Achalasia- A disease of the esophagus that mainly affects young adults. Abnormal function of nerves and muscles of the esophagus causes difficulty swallowing and sometimes chest pain. Regurgitation of undigested food can occur, as can coughing or breathing problems related to entry of food material into the lungs. See https://www.medicinenet.com/

was opened. (Tr. 57, citing 2F/16, 7F/1). The ALJ also explained that the plaintiff has not treated with a gastroenterologist since Dr. Reynolds, plaintiff's treating gastroenterologist, went on sabbatical in March 2016. (Tr. 57, citing 2F/17). The ALJ supported that finding that plaintiff's achalasia was nonsevere by explaining that there are no treatment records that indicate any symptoms, treatment, or functional limitations related to plaintiff's achalasia. (Tr. 57).

### Sarcoidosis[4]

The ALJ explained that plaintiff reported in 2008 that her sarcoidosis had been asymptomatic since the 1993 diagnosis and treatment with steroids. (Tr. 57, citing 12F/72). During plaintiff's July 2015 and June 2016 office visits and her April 2016 emergency department visit, it was noted that plaintiff's sarcoidosis was asymptomatic. (Tr. 57, citing 6F/3,9, 7F/1). The ALJ again supported the decision that plaintiff's sarcoidosis was nonsevere by noting that plaintiff exhibited no symptoms, received no treatment and has shown no functional limitations from her sarcoidosis. (Tr. 57-58).

### Hypertension/Vertigo

The ALJ evaluated plaintiff's hypertension and vertigo and found both nonsevere. (Tr. 58). The ALJ explained that in July 2015, plaintiff reported that she frequently checks her blood pressure at work and it is normal, but it is often raised when taken at the doctor's office due to plaintiff's anxiety. (Tr. 58, citing 6F/9). In April 2016, plaintiff was seen for dizziness, but plaintiff's examination revealed normal results. (Tr. 58, 2F/18). The ALJ noted that while plaintiff's blood pressure was treated with Valsartan and Chlorthalidone, there is no evidence of any symptoms or functional limitations. (Tr. 58).

---

[4] Sarcoidosis- A disease of unknown origin that causes small lumps (granulomas) due to chronic inflammation in body tissues. Sarcoidosis can appear in almost any body organ, but it most often starts in the lungs or lymph nodes. https://www.medicinenet.com/

GERD

A June 2016 treatment note indicates that plaintiff has a history of GERD and treats with Prevacid and Chia tablets. (Tr. 58, citing 6F/3). However, the ALJ explained that there were no records that plaintiff has any functional limitations from her GERD. (Tr. 58).

Herniated Discs

The ALJ found that the plaintiff's claimed history of herniated discs was not a medically determinable impairment. (Tr. 55). The ALJ noted that the plaintiff alleged herniated discs in her back, however, none of the records show any diagnosis of herniated disc, or any other spinal impairment. (Tr. 55). All of the plaintiff's examinations revealed normal results, with full range of motion. (Tr. 55). The ALJ acknowledged that plaintiff testified that she had a spinal decompression performed by a chiropractor in 2000 and had epidural injections in 2002, however, there is no indication in plaintiff's recent treatment records that plaintiff had any treatment related to her spine. (Tr. 55).

The ALJ explained that plaintiff's treatment history and medical reports do not support functional limitations due to impairments. Based on the above analysis, we find that the ALJ provided substantial support for the determination that the plaintiff's medically determinable impairments were not severe.

B. Whether the ALJ Erred in Failing to Consider Evidence

Plaintiff next alleges that the ALJ failed to consider evidence of plaintiff's degeneration and herniation of several lumbar discs. See Pl. Brief 10/28/19 at 6. Plaintiff cites two pieces of evidence to support this claim, a 2008 chest x-ray and Chestnut Hill Hospital records from 2002. See Pl. Brief 5-6.

As noted immediately above, the ALJ considered plaintiff's alleged history of herniated discs and found that there was no indication plaintiff had a medically determinable impairment. (Tr. 55). The ALJ noted that plaintiff alleged herniated discs in her back, however, none of the records show any diagnosis of herniated disc, or any other spinal impairment. (Tr. 55). All of the plaintiff's examinations revealed normal results, with full range of motion. (Tr. 55). The ALJ acknowledged that plaintiff testified that she had a spinal decompression performed by a chiropractor in 2000 and had epidural injections in 2002, however, there is no indication in plaintiff's recent treatment records that plaintiff had any treatment related to her spine. (Tr. 55).

Plaintiff first cites a chest x-ray from July 25, 2008. (Tr. 645). That x-ray was taken eight years prior to plaintiff's alleged disability onset date and was taken for the purpose of examining plaintiff's lungs. (Tr. 645). The impression recorded was: no active disease of the lungs. (Tr. 645). In the findings section, it was indicated that the dorsal (thoracic) spine revealed degenerative changes. (Tr. 645).

The court acknowledges that the ALJ did not discuss the 2008 chest x-ray. However, that failure is harmless error. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) (error in social security case was " 'harmless' when, despite the technical correctness of an appellant's legal contention, there is also 'no set of facts' upon which the appellant could recover") (quoting Renchenski v. Williams, 622 F.3d 315, 341 (3d Cir. 2010) ); see also Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (in social security cases, remand is not required where "it would not affect the outcome of the case."). The degeneration shown on the x-ray was of the thoracic spine. At the hearing, plaintiff alleged herniation and degeneration of

the lumbar spine, not the thoracic spine. (Tr. 81). The 2008 chest x-ray indicated a finding of thoracic degenerative changes. There was no diagnosis of lumbar herniation or degeneration in the 2008 chest x-ray. The accompanying office note from July 25, 2008 recorded that the plaintiff had no complaints of lower back pain. (Tr. 650). This court's review of the ALJ's finding that plaintiff's lumbar spine degeneration and herniation were not medically determinable impairments shows that said finding was supported by substantial evidence. The 2008 x-ray does not alter the ALJ's analysis that plaintiff's examinations revealed normal results, with full range of motion. Additionally, there were no records that indicated the plaintiff received any treatment related to her spine since the 2002 steroid injections. These injections were fourteen years prior to the plaintiff's alleged disability onset date. The 2008 x-ray does not change the ALJ's reasoning regarding the plaintiff's allegation of lumbar spine degeneration and herniation. Thus, the ALJ's failure to discuss said x-ray remains a harmless error because the ALJ's finding that plaintiff's alleged lumbar spine degeneration and herniation were not medically determinable remains supported by substantial evidence. See Brown, 649 F.3d at 195.

Plaintiff next cites records from Chestnut Hill Hospital showing that plaintiff was diagnosed with a bulging or herniated disc in her lumbar spine and received a steroid injection in 2002, fourteen years prior to her alleged disability onset date. See Pl. Brief at 5-6, citing Tr. 124, 126, 133. However, those records were not submitted to the ALJ. The Chestnut Hill Hospital records were submitted for the first time to the Appeals Council. The Appeals Council found that the 2002 records did not relate to the relevant period of time at issue. (Tr. 32).

The United States Court of Appeals for the Third Circuit has held that "although evidence considered by the Appeals Council is part of the administrative record on appeal, it

cannot be considered by the District Court in making its substantial evidence review." Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). As a result, even if new evidence is presented to and considered by the Appeals Council, the District Court is limited to review of the ALJ's decision, not that of the Appeals Council. Id. Thus, evidence submitted after the ALJ's decision cannot be used to argue that the ALJ's decision is not supported by substantial evidence. Matthews, 239 F.3d at 594-95.

However, such evidence can be considered to determine whether it provides a basis for remand under sentence six of Section 405(g). Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Under sentence six (6) of Section 405(g), a plaintiff has the burden of proving that the evidence is "new" and "material," and that "good cause" exists for not having incorporated the evidence into the administrative record before the ALJ made his or her determination. Id. The Third Circuit Court of Appeals explained that, to be material, "the new evidence [must] relate to the time period for which benefits were denied, and that it can not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Id. Furthermore, "material" means that the evidence must be probative. Id. The new evidence, therefore, must create a reasonable probability that the new evidence would have changed the ALJ's decision had it been presented to the ALJ. Id. Finally, plaintiff must show "good cause" for not incorporating the evidence into the earlier administrative record the ALJ used to determine the claim. Scatorchia v. Comm'r of Soc. Sec., 137 Fed.Appx. 468, 472 (3d Cir. 2005).

Plaintiff here has failed to show that the Chestnut Hill Hospital records are new and material. Likewise, the plaintiff has not shown good cause for failing to provide the ALJ

with said records.  First, the records are not new, they are from 2002, sixteen years prior to the ALJ's 2018 decision.  Second, the records are not material.  The Appeals Council ruled that the records did not relate to the relevant time period.  Furthermore, the records do not create a reasonable probability that the ALJ would have changed her decision had she been presented with them.  The ALJ acknowledged that the plaintiff testified that she received epidural injections in 2002.  Considering that information, the ALJ explained that plaintiff's musculoskeletal findings had all been consistently negative and plaintiff had full range of motion.  The ALJ also explained that there was no indication that the plaintiff had any recent treatment related to her spine during the relevant time period.  (Tr. 55).  Third, plaintiff has failed to provide good cause for failing to submit the sixteen year old records to the ALJ.

After review, we believe that the ALJ has provided substantial support for the finding that plaintiff's lumbar spine impairment was not a medically determinable impairment.

### C.  Whether the ALJ Erred in Assessing Plaintiff's Credibility

Plaintiff argues that the ALJ failed to consider plaintiff's subjective complaints.  See Pl. Brief at 13.

An ALJ is empowered to evaluate a claimant's credibility.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  Even if an ALJ concludes that a medical impairment exists which could reasonably cause the symptoms alleged, the ALJ must evaluate the intensity and persistence of the symptoms, and the extent to which any credibly found symptoms affect the claimant's ability to work.  20 CFR § 404.1529(b)-(c).  In doing so, the ALJ may consider the internal consistency of the claimant's own statements, the medical evidence, the claimant's medical treatment history, and findings by state agency or other

program physicians. 20 C.F.R. § 1529. Deference must be given to the ALJ's determination on issues of credibility so long as the ALJ discusses the issue and the ALJ's finding is supported by substantial evidence. Alvarez v. Sec'y of Health and Human Serv., 549 F. Supp. 897, 899-900 (E.D. Pa. 1982). Therefore, this court will review the ALJ's analysis and the relevant medical records in dispute, but will not re-weigh the evidence or substitute the court's own opinion for that of the ALJ. See Burns v. Barnhart, 312 F.3d at 118.

The ALJ found that after considering all the evidence of record, plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence of record. (Tr. 57).

As explained in detail above, the ALJ adequately considered and summarized all of the plaintiff's medical records. The ALJ noted that the plaintiff alleged she stopped working as a pediatric trauma nurse due to physical pain and shortness of breath, her GERD affects her ability to eat food and drink water, and her uveitis makes it difficult to read. (Tr. 57). The ALJ explained that the plaintiff worked for years with the same symptoms, including visual symptoms, aching in her back, and headaches. The ALJ also noted that at the time of the 2018 hearing, plaintiff had not seen her gastroenterologist or treated at Wills Eye since 2016. (Tr. 57). The ALJ explained that plaintiff's earning remained consistent prior to her alleged onset date, there was no correlation between her alleged progression of symptoms and the amount of work plaintiff was able to do, and plaintiff's letter of retirement did not mention anything about retiring due to alleged impairments. (Tr. 58-59, citing 3F/1).

Finally, the ALJ relied on the opinion of the state agency medical consultant, Dr. Morrison, M.D., who found the plaintiff has no severe impairments. (Tr. 59). Plaintiff appears to argue that the ALJ erred in relying on Dr. Morrison's opinion because the ALJ failed to list a specialty for Dr. Morrison. That argument fails. Under 20 C.F.R. 404.1527(c) the ALJ is to consider a state agency examiner's opinion under factors that include whether the opinion is supported by relevant evidence and is consistent with the record. 20 C.F.R. 404.1513a(b)(1) at 404.1527(c). The ALJ found that Dr. Morrison's opinion was consistent with the overall medical records that show that the plaintiff received little treatment and had negative physical examinations. (Tr. 59). We find the ALJ did appropriately consider Dr. Morrison's opinion.

The ALJ provided a detailed review of plaintiff's records and explained the reasons behind the decision to not credit plaintiff's subjective complaints. The ALJ was in the best position to evaluate the plaintiff's credibility, and there appears no reason after review of the record here to disregard the credibility decision advanced by the ALJ.

VI.     CONCLUSION

The court finds the decision of the ALJ that plaintiff does not have a severe impairment, and hence, is not disabled under the ACT, is supported by substantial evidence.

Accordingly, the court will deny the plaintiff's request for review, and affirm the decision of the Commissioner of Social Security.

An Order follows.